UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

RANDY A. EGGLESTON,                                Case No. 1:13-cv-01997-HA

                        Plaintiff,                 OPINION AND ORDER

            v.

COMMISSIONER SOCIAL
SECURITY ADMINISTRATION,

                        Defendant.

_____

HAGGERTY, District Judge:

     Plaintiff Randy A. Eggleston seeks judicial review of a final decision by the Acting

Commissioner of the Social Security Administration denying his applications for Supplemental

Security Income (SSI) and Disability Insurance Benefits (DIB).  This court has jurisdiction to

review the Acting Commissioner's decision under 42 U.S.C. § 405(g).  After reviewing the

record, this court concludes that the Acting Commissioner's decision must be AFFIRMED.


OPINION AND ORDER - 1

## STANDARDS

A claimant is considered "disabled" under the Social Security Act if: (1) he or she is unable to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Hill v. Astrue,* 688 F.3d 1144, 1149-50 (9th Cir. 2012) (citing 42 U.S.C. § 1382c(a)(3); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)); 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a). In steps one through four, the Commissioner must determine whether the claimant (1) has not engaged in SGA since his or her alleged disability onset date; (2) suffers from severe physical or mental impairments; (3) has severe impairments that meet or medically equal any of the listed impairments that automatically qualify as disabilities under the Social Security Act; and (4) has a residual functional capacity (RFC) that prevents the claimant from performing his or her past relevant work. *Id.* An RFC is the most an individual can do in a work setting despite the total limiting effects of all his or her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), and Social Security Ruling (SSR) 96-8p. The claimant bears the burden of proof in the first four steps to establish his or her disability.

At the fifth step, however, the burden shifts to the Commissioner to show that jobs exist in a significant number in the national economy that the claimant can perform given his or her

RFC, age, education, and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996). If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits. 20 C.F.R. §§ 404.1520(f)(1), 416.920(a). On the other hand, if the Commissioner can meet its burden, the claimant is deemed to be not disabled for purposes of determining benefits eligibility. *Id.*

The Commissioner's decision must be affirmed if it is based on the proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett*, 180 F.3d at 1097; *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted).

When reviewing the decision, the court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098. The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances where the evidence supports either outcome. *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998). If, however, the Commissioner did not apply the proper legal standards in weighing the evidence and making the decision, the decision must be set aside. *Id.* at 720.

## BACKGROUND

Plaintiff was born in 1970 and was thirty-six years old at the time of his alleged disability onset date. He protectively filed his applications for Title II and Title XVI disability benefits on April 27, 2009, alleging an onset date of August 2, 2006. Plaintiff's alleged disability was based on a number of physical and mental impairments, including: history of aortic tear, chest wall pain

OPINION AND ORDER - 3

stemming from surgery, hypertension, degenerative disc disease, angina, gout, asthma, depression, and a history of substance abuse. Plaintiff met the insured status requirements of the Social Security Act through March 13, 2013. Plaintiff's applications were denied initially and upon reconsideration. An Administrative Law Judge (ALJ) conducted a video hearing on May 7, 2012. The ALJ heard testimony from plaintiff, who was represented by counsel, and an impartial vocational expert (VE). On June 29, 2012, the ALJ issued a decision finding that plaintiff was not disabled as defined under the Social Security Act.

At step one, the ALJ found that plaintiff had not engaged in SGA since August 2, 2006. Tr. 21, Finding 2.[1] At step two, the ALJ found that plaintiff suffered from the following severe impairments: a history of an aortic tear, a history of thoracotomy, hypertension, degenerative disc disease of the cervical spine, a history of angina, a history of gout, a history of left upper extremity pain, a history of asthma, depression, and a history of polysubstance abuse. Tr. 21, Finding 3. At step three, the ALJ determined that plaintiff's severe impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 26, Finding 4. At step four, the ALJ determined that plaintiff has the RFC to lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk six hours and sit six hours in an eight hour workday; occasionally climb ramps, stairs, ladders, ropes, and scaffolds; frequently balance, stoop, kneel, crouch, and crawl; occasionally handle with the non-dominant left upper extremity; and that he must avoid concentrated exposure to hazards such as dangerous moving machinery and unprotected heights. Tr. 27, Finding 5.

Based on plaintiff's RFC and testimony from the VE, the ALJ determined that plaintiff

---

[1] Tr. refers to the Transcript of the Administrative Record.

was unable to perform any of his past relevant work.  Tr. 34, Finding 6.  At step five, however,

the ALJ found that plaintiff could perform other work existing in significant numbers in the

national economy including work as an usher, counter clerk, or survey worker.  Tr. 35, Finding

10.  Therefore, the ALJ found that plaintiff was not disabled as defined in the Social Security

Act.  The Appeals Council denied plaintiff's request for administrative review, making the ALJ's

decision the final decision of the Acting Commissioner.  Plaintiff subsequently initiated this

action seeking judicial review.

## DISCUSSION

Plaintiff argues that the ALJ erred in a number of ways.  First, plaintiff claims that the

ALJ failed to give proper weight to the opinions and conclusions of plaintiff's treating physician

and that the ALJ improperly substituted his own opinion for that of plaintiff's treating and

examining medical sources on the record.  Second, plaintiff contends that the ALJ rejected part

of his testimony regarding the intensity of his pain and other symptom testimony for less than

clear and convincing reasons.  Third, plaintiff asserts that, because of these failures, the ALJ

improperly relied on the VE testimony in determining that plaintiff could perform other work

existing in significant numbers in the national economy.  This court will address each of

plaintiff's arguments in turn.

### 1.    Expert Testimony

In plaintiff's opening brief, he states that the ALJ erred by improperly rejecting the

opinions and ultimate conclusions of plaintiff's treating physician, Roy Lichtenstein, MD.

Plaintiff also asserts that the ALJ substituted his own opinion for that of plaintiff's treating and

examining physicians.  The ALJ is the "final arbiter" regarding the resolution of ambiguities in

the medical evidence.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  An ALJ may

OPINION AND ORDER - 5

reject uncontradicted opinions of treating physicians for clear and convincing reasons that are

supported by substantial evidence, but contradicted opinions may be rejected by providing

specific and legitimate reasons that are supported by substantial evidence. *Bayliss v. Barnhart,*

427 F.3d 1211, 1216 (9th Cir. 2005) (citations omitted).

In this case, the ALJ provided the following reasons for discrediting Dr. Lichtenstein's

opinion: that Dr. Lichtenstein's assessment concerning the ultimate issue of disability is an issue

reserved to the Commissioner; that his opinion was not well supported by medically acceptable

clinical and laboratory diagnostic techniques and was inconsistent with other substantial evidence

in the record; that he is a general practitioner and thus opinions outside his field of expertise are

subject to less weight; that his opinions were not supported by his own records; and that his

opinions are based in part on plaintiff's own statements that the ALJ found were not credible.

An ALJ is not bound by physician opinions on ultimate issues. *See* 20 C.F.R. §

404.1527(e) (The ALJ is "responsible for making the determination or decision about whether

you meet the statutory definition of disability.... A statement by a medical source that you are

'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

Plaintiff argues that Dr. Lichtenstein's medical opinion encompassed far more than the

conclusion that plaintiff was disabled. While the court agrees that Dr. Lichtenstein's diagnosis is

more than a bare finding of disability, the ALJ was correct in discounting the portions of his

reports that reach the ultimate issue of disability. Because the ALJ also addressed the portions of

Dr. Lichtenstein's opinion other than the ultimate conclusion, the ALJ committed no harmful

error.

With regard to whether Dr. Lichtenstein's testimony was not well supported by medically

acceptable clinical and laboratory diagnostic techniques and was inconsistent with other

OPINION AND ORDER - 6

substantial evidence in the record, the ALJ relied on the assessment of a number of physicians in finding that plaintiff was not disabled. Dr. Lichtenstein's opinion was contradicted by the findings of some of the other doctors who examined plaintiff; Drs. O'Sullivan, Berner, and Lahr all found that plaintiff's disabilities were not so severe as to prevent him from performing light work. Tr. 27-28, Finding 5. Thus the ALJ committed no harmful error.

The fact that he is a general practitioner was another reason the ALJ cited for giving less weight to Dr. Lichtenstein's opinions regarding plaintiff's mental health, which is outside his field of expertise. Any competent, licensed physician is qualified to state an opinion on a claimant's mental health. *See, e.g., Crane v. Shalala*, 76 F .3d, 251 254 (9th Cir. 1996). Nevertheless, an ALJ is permitted to accept an experts' opinions over a non-experts' opinions. *McCawley v. Astrue*, 423 F. App'x 687, 689 (9th Cir. 2011). Here, the ALJ gave more weight to the assessments of mental health experts that examined plaintiff in finding that his mental health impairments were not severe. Tr. 25, Finding 3. Thus, the ALJ did not err in giving Dr. Lichtenstein's opinion less weight than some of the other medical evidence with regard to plaintiff's mental health.

The ALJ also said that Dr. Lichtenstein's opinions were inconsistent with his own records was another reason for giving his opinion less weight. Contradictions between a doctor's own treatment notes and his conclusions are a valid reason for discounting his opinion. *Bayliss*, 427 F.3d at 1216. The ALJ noted that although Dr. Lichtenstein had concluded that plaintiff was disabled, on other occasions he had stated that plaintiff "looks terrific," had normal blood pressure readings, and was "in excellent spirits with no evidence of anxiety or depression." Tr. 29, Finding 5. Therefore the ALJ did not err for discounting Dr. Lichtenstein's opinions due to their inconsistencies.

OPINION AND ORDER - 7

Finally, the ALJ reasoned that Dr. Lichtenstein relied primarily on the subjective complaints of plaintiff rather than medical findings. An ALJ may reject a treating physician's opinion if it is based to a large extent on plaintiff's self-reports that have been properly discounted. *Tommasetti*, 533 F.3d at 1041. Here, the ALJ properly found that plaintiff's statements regarding the intensity, persistence, and the limiting effects of his symptoms are not fully credible. Therefore, the court finds that the ALJ gave clear and convincing reasons for giving less weight to the testimony of Dr. Lichtenstein that was based in part on the plaintiff's descriptions of his symptoms. In reaching the conclusion that the ALJ did not err in giving less weight to Dr. Lichtenstein's testimony, the court also finds that the ALJ did not substitute his own opinions for those of the experts who offered their assessments of plaintiff's condition; the ALJ's ultimate conclusions are properly based on the medical evidence.

### 2.    Plaintiff's Testimony

Plaintiff asserts that the ALJ erred by failing to provide clear and convincing reasons for finding that plaintiff's testimony is less than fully credible. An ALJ need not believe every allegation of disabling pain or functional limitation advanced by a claimant. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). However, once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ may consider many factors in weighing a claimant's credibility, including ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, other testimony by the claimant that appears less than candid, and inadequately explained failures to

OPINION AND ORDER - 8

seek treatment or to follow a prescribed course of treatment. *Smolen*, 80 F.3d at 1284. A claimant's statements cannot be rejected solely because the testimony is viewed as unsubstantiated by the available objective medical evidence. 20 C.F.R. §§ 404.1529(c)(2); 416.929(c)(2).

Here, the ALJ provided a number of reasons for why he found plaintiff's testimony less than credible. First, the ALJ found that plaintiff's alleged symptoms were unsupported by the record, specifically with regard to his anxiety and depression, his back problems, and mobility, Tr. 30-31, Finding 5. Second, the ALJ found that plaintiff's inconsistent statements regarding when he quit working impacted his credibility. Tr. 31, Finding 5. Third, the ALJ also noted that plaintiff's part-time work activity, as well as his personal activities after his alleged onset date, further diminished the credibility of his testimony regarding the severity of his impairments. Tr. 31-32, Finding 5. Fourth, the ALJ listed plaintiff's failure to follow his recommended treatment and counseling as another reason for discounting plaintiff's credibility. Finally, the ALJ stated that, although he appeared sincere at the hearing, plaintiff demonstrated a history of manipulation and dishonesty for short term gain, and that this further diminished his credibility. Thus, the court finds that the ALJ has provided clear and convincing evidence for finding that plaintiff was not credible.

### 3.    Vocational Expert Testimony

Plaintiff argues that because the ALJ relied on the answers from the VE that were not based upon all of plaintiff's limitations, the VE's testimony has no evidentiary value. In making that determination at step five, the ALJ may elicit testimony from a VE, but the "[h]ypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (citations omitted).

OPINION AND ORDER - 9

However, if a VE's hypothetical does not reflect all the claimant's limitations, then the "expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Delorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991).

In this case, the court has found that the ALJ properly considered all the evidence before him. As a result, the ALJ raised proper hypotheticals to the VE and properly relied on the VE's testimony regarding whether jobs existed in significant numbers in the national economy that plaintiff can perform.

## CONCLUSION

Based on the foregoing, this court concludes that the findings of the Acting Commissioner are based upon correct legal standards and are supported by substantial evidence existing in the record. The Acting Commissioner's decision denying Randy A. Eggleston's application for benefits is AFFIRMED.

IT IS SO ORDERED.

DATED this _28_ day of October, 2014.

Ancer L. Haggerty
United States District Judge

OPINION AND ORDER - 10